AO 91 (Rev. 11/82)

# CRIMINAL COMPLAINT

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>Eliseo RODRIGUEZ-BARAJAS,<br>Rigoberto BETANCOURT-VELEZ, and<br>Carlos Uriel VALENZUELA-MENDEZ | DOCKET NO.<br><br>MAGISTRATE'S CASE NO.<br>M 13 02666 |

FILED
CLERK, U.S. DISTRICT COURT
SEP 30 2013
CENTRAL DISTRICT OF CALIFORNIA

Complaint for violation of Title 21, United States Code, Sections 841(a)(1), and 841(b)(1)(A)(vii)

| NAME OF MAGISTRATE JUDGE | | LOCATION |
|---|---|---|
| HONORABLE VICTOR B. KENTON | UNITED STATES MAGISTRATE JUDGE | Los Angeles, California |

| DATE OF OFFENSE | PLACE OF OFFENSE | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|
| September 29, 2013 | Santa Barbara County | |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

21 U.S.C. § 841(a)(1), and 841(b)(1)(A)(vii)

On or about September 29, 2013, in Santa Barbara County, within the Central District of California, defendants, Eliseo RODRIGUEZ-BARAJAS, Rigoberto BETANCOURT-VELEZ, and Carlos Uriel VALENZUELA-MENDEZ, knowingly and intentionally possessed with intent to distribute 1,000 kilograms or more of a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(vii).

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge.<br><br>Paul Carbone | SIGNATURE OF COMPLAINANT<br><br>OFFICIAL TITLE<br>Special Agent<br>Homeland Security Investigations |
|---|---|

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[1] | DATE |
|---|---|
| VICTOR B. KENTON | September 30, 2013 |

[1] See Federal Rules of Criminal Procedure 3 and 54

AUSA Aaron Lewis x4586 AL REC: Detention

# AFFIDAVIT

I, Paul Carbone, being duly sworn, hereby state as follows:

1. I am a Special Agent with the Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"), and I have been so employed since March 2003. I was previously employed as a Special Agent with the United States Customs service ("USCS") since 1991. I am currently assigned to the Assistant Special Agent in Charge, Ventura County, California ("ASAC/Ventura"). My responsibilities include the investigation of violations of federal criminal laws, including crimes involving money laundering, narcotics trafficking, smuggling, fraud, and immigration violations.

2. As a Special Agent with both HSI and USCS, I have investigated and interviewed hundreds of individuals suspected of committing various violations of federal law, including violations of Title 21 of the United States Code. During the course of these investigations, I have also conducted numerous arrests, executed numerous search and arrest warrants, and interviewed numerous witnesses.

## PURPOSE OF THE AFFIDAVIT

3. This affidavit is made in support of a criminal complaint charging the following individuals:

a. Eliseo RODRIGUEZ-BARAJAS ("RODRIGUEZ-BARAJAS");

b. Rigoberto BETANCOURT-VELEZ ("BETANCOURT-VELEZ");

and,

c. Carlos Uriel VALENZUELA-MENDEZ ("VALENZUELA-MENDEZ").

with violations of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(vii) (Possession with Intent to Distribute 1,000 kilograms or more of a mixture or substance containing a detectable amount of marijuana).

4. The facts set forth in this affidavit are based upon written and oral reports provided to me by federal and local law enforcement agents, my training and experience, and my personal observations. This affidavit is made for the sole purpose of demonstrating probable cause and does not set forth all of my knowledge regarding this investigation.

PROBABLE CAUSE

Summary

5. At approximately 9:50 P.M. on September 28, 2013, while conducting surveillance off the coast of Southern California over the Pacific Ocean, the crew of a U.S. Coast Guard aircraft, using thermal imaging equipment, observed an open-bowed fishing vessel, commonly referred to as a "panga" boat, located approximately 12 miles south of Santa Rosa island, traveling northwest towards the northern Santa Barbara County coastline. Using thermal imaging equipment, the crew of the aircraft were able to see three individuals on board the panga, as well as numerous items that

appeared to be packages or bundles. The panga ultimately came ashore on Tajiguas Creek beach, carrying a load of approximately 1,500 kilograms of marijuana packaged in bundles. Local law enforcement agents encountered RODRIGUEZ-BARAJAS, BETANCOURT-VELEZ, and VALENZUELA-MENDEZ while they were unloading marijuana from the panga.

Background: Maritime Drug Smuggling Operations

6. Based on my training and experience as an HSI Special Agent, I am aware that maritime narcotics smuggling operations in Southern California, including operations to smuggle marijuana into the United States by boat, typically operate as follows:

a. Narcotics smugglers who intend to bring narcotics into the United States illegally bring narcotics to areas in Mexico near the United States/Mexican border. Narcotics smugglers will often bring narcotics into the United States by boat, often using a small, open, outboard fishing boat with a distinct appearance known as a "panga."

b. The laws of the United States prohibit the importation of narcotics into the United States unless certain legal requirements are met. Narcotics smugglers do not present smuggled narcotics for inspection to determine if these legal requirements were met. Instead, narcotics smugglers often conceal narcotics within boats in order to circumvent United States laws.

c. After surreptitiously crossing the United States/Mexican border by boat, narcotics smugglers travel to predetermined areas where the narcotics are unloaded from the boat and loaded into waiting vehicles. Narcotics smugglers will often contact accomplices onshore who will inform them exactly where to direct the boat to meet the waiting vehicles. Once they are transferred from the panga to the vehicles, the narcotics are then typically transported to stash houses, where the narcotics are divided and given to narcotics dealers. Many such stash houses are located in the greater Los Angeles area.

Current Investigation

7. On September 29, 2013, I spoke to U.S. Coast Guard officer Tyler Sherman, who is a law enforcement liaison for the U.S. Coast Guard, and learned the following facts:

a. On September 28, 2013, at approximately 9:50 P.M., while conducting surveillance off the coast of southern California over the Pacific Ocean, the crew of a U.S. Coast Guard C-130 Airship CG 1701 ("USCG Aircraft"), using thermal imaging equipment, observed a panga engaged in what appeared to be a transnational maritime smuggling event off the coast of Northern Santa Barbara County, California.

b. Specifically, the USCG Aircraft encountered the panga approximately 12 miles south of Santa Rosa Island. The panga was traveling northwest at approximately 17 knots. Using

thermal imaging equipment, the crew saw three individuals aboard the panga, later identified as RODRIGUEZ-BARAJAS, BETANCOURT-VELEZ, and VALENZUELA-MENDEZ, as well as several items that appeared to be bundles or packages.

c. At approximately 2:00 A.M. on September 29, 2013, the crew of the USCG Aircraft, which had observed the panga continuously since encountering it hours earlier, saw the panga come ashore near Tajiguas Creek beach in Santa Barbara County.

8. According to U.S. Coast Guard officer Sherman, after initially encountering the panga, the crew of the USCG Aircraft reported the panga's location and the direction it was traveling to U.S. Coast Guard District Eleven. This information was forwarded to the Maritime Coordination Center, which altered U.S. Border Patrol that a panga boat carrying suspected narcotics was headed in the direction of the northern Santa Barbara coastline.

9. According to U.S. Border Patrol Officer John Carrell, he received the information forwarded to the Maritime Coordination Center from the Coast Guard, and reported it to Sargent Brian Thielst of the Santa Barbara County Sheriff's Department, who began to search the area where the panga might come ashore.

10. On September 29, 2013, and September 30, 2013, I spoke to Santa Barbara County Sherriff's Department Sargent Brian Thielst, and learned the following facts:

a. At approximately 2:30 A.M., Sargent Thielst, who was using night vision equipment, saw three men, later identified as RODRIGUEZ-BARAJAS, BETANCOURT-VELEZ, and VALENZUELA-MENDEZ, removing packages from the panga and placing them on the beach. At approximately 2:35 A.M., Sargent Thielst, two SBSD Deputy Sheriffs, and two officers of California Highway Patrol detained RODRIGUEZ-BARAJAS, BETANCOURT-VELEZ, and VALENZUELA-MENDEZ.

11. According to U.S. Border Patrol Officer John Carrell and reports provided by U.S. Border Patrol Coastal Border Enforcement Team-North ("CBET-N") officers Jamie Taylor and Nirey Del Toro, at approximately 2:35 A.M., CBET-N officers, including, officers Jamie Taylor and Nirey Del Toro, arrived at Tajiguas Creek beach, where they arrested RODRIGUEZ-BARAJAS, BETANCOURT-VELEZ, and VALENZUELA-MENDEZ for suspected narcotics and immigration violations and took custody of the suspected narcotics. Officers seized approximately 130 bundles of suspected narcotics.

12. According to HSI Group Supervisor Garrick Carlton, HSI agents and Border Patrol agents transported RODRIGUEZ-BARAJAS, BETANCOURT-VELEZ, and VALENZUELA-MENDEZ, and the suspected narcotics to HSI's offices in Ventura County for booking. According to HSI Special Agent James Kessel, CBET agents and DHS/HSI Special Agents weighed the bundles, including packaging, and determined that the total weight of the bundles was

approximately 1,500 kilograms. Also according to Special Agent Kessel, DHS/HSI agents then conducted a narcotics field test on two randomly selected samples from different bundles and confirmed that the bundles contained marijuana. According to HSI Special Agent John Bigler, RODRIGUEZ-BARAJAS, BETANCOURT-VELEZ, and VALENZUELA-MENDEZ provided booking and identifying information and were determined to have entered the country illegally from Mexico without inspection or admission by an Immigration Officer.

///

///

///

CONCLUSION

13. Based on the foregoing facts and my training and experience, I submit that there is probable cause to believe that Eliseo RODRIGUEZ-BARAJAS, Rigoberto BETANCOURT-VELEZ, and Carlos Uriel VALENZUELA-MENDEZ illegally possessed with intent to distribute a controlled substance, specifically marijuana, in violation of Title 21, United States Code Sections 841(a)(1) and 841(b)(1)(A)(vii).

/S/

PAUL CARBONE
Special Agent
Homeland Security Investigations

Sworn to and subscribed to before me
on this 30th day of September, 2013

VICTOR B. KENTON

THE HONORABLE VICTOR B. KENTON
United States Magistrate Judge